IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| Edward Medrano, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>Akima Global Services, LLC,<br><br>    Defendant. | Case No. 1:22-cv-00046 |

**AGREED MOTION FOR APPROVAL OF**
**<u>SETTLEMENT AND DISMISSAL OF CLAIMS WITH PREJUDICE</u>**

COMES NOW Defendant, Akima Global Services, LLC ("AGS"), with the consent of Plaintiff, Edward Medrano ("Plaintiff" or "Medrano"), individually and on behalf of all others similarly situated ("the Settlement Class Members") (jointly referred to herein as "the Parties"), by counsel and pursuant to the Federal Rules of Civil Procedure, and files this Agreed Motion for Approval of Settlement and Dismissal of Claims with Prejudice ("the Motion"). The Parties' attach as **Exhibit 1** hereto their settlement agreement ("the Agreement"), in support of this Motion.

**I.    INTRODUCTION**

The Parties have reached a settlement ("the Settlement") of Plaintiff's claims against AGS related to certain alleged unpaid "off-the-clock" work under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). As discussed more fully herein, the Settlement was the result of arm's length negotiations between experienced counsel for all Parties, including both informal and formal settlement discussions. The Settlement was accomplished after the Parties exchanged necessary information, including information concerning Medrano and the Settlement Class Members' dates and hours worked, COVID-19 testing, and amounts paid to them by AGS during the relevant time period. The terms of the Settlement are reasonable, appropriate, and fair to all Parties. Accordingly, the Parties

ask this Court to approve their negotiated Settlement and enter an Order dismissing Plaintiff's and the Settlement Class Members' claims against AGS with prejudice, as provided by the Parties' Agreement.

## II. BACKGROUND AND SUMMARY OF ARGUMENTS

Medrano filed this putative FLSA collective action lawsuit ("the Lawsuit") on January 14, 2022, in the U.S. District Court for the Eastern District of Virginia. ECF No. 1. On February 25, 2022, Medrano filed his First Amended Complaint. ECF No. 12. Therein, Medrano alleges that AGS failed to pay him and the Putative Class Members for certain "off-the-clock".[1] *Id.* Through discussions amongst counsel, Medrano clarified the unpaid wage allegations and the different conduct falling within the off the clock tasks by employees. According to Medrano the alleged off the clock work was measured in minutes and not hours. Medrano sought damages from AGS for back wages, liquidated damages, attorney's fees, and costs. *Id.* AGS denies Medrano's allegations and rather contends that Medrano and the employees he seeks to represent never performed any "off-the-clock" work, were paid fully for all hours worked, and are not entitled to any additional compensation under applicable law. *See* ECF No. 17. AGS further maintains that its pay practices were adopted in good faith and therefore, assuming arguendo its pay practices violated the FLSA, liquidated damages are not appropriate. 29 U.S.C. § 260. Despite AGS's belief that it did not violate any wage and hour laws, it seeks to avoid the costs and uncertainty associated with defending against the Lawsuit.

Since the filing of the Lawsuit, counsel for the Parties engaged in settlement discussions and exchanged information related to the nature and extent of Plaintiff's allegations. Counsel discussed methods for calculating alleged damages before arriving at a final offer that the Parties believe to

---

[1] The First Amended Complaint also alleges that AGS failed to account for pay differentials in calculating the regular rate of pay and overtime rate for the Settlement Class Members, resulting in unpaid overtime. After extensive informal discovery on the matter, and the recognition that the regular rate/unpaid overtime claim was unsubstantiated (and was in fact properly paid), Class Counsel subsequently informed counsel for AGS that he would drop the regular rate/unpaid overtime claim.

represent complete relief.[2] The Parties' now seek Court approval of their agreed settlement terms as stated in the Parties' confidential settlement Agreement, attached hereto as **Exhibit 1.**

### III.   THE PROPOSED SETTLEMENT

As set forth in detail in the Agreement, the Parties reached a settlement on behalf of Plaintiff, the opt-in plaintiffs, and unarmed security guards at the Unaccompanied Minor Shelter Center in Fort Bliss, Texas employed by AGS who allege they were not paid for "off-the-clock" work in the three year period prior to the filing of the Complaint. *See* Ex. 1. The total combined Settlement Award for all Settlement Class Members shall equal $41,790.00. Each Settlement Class Member's pro rata share of the Settlement Award will be calculated based on Class Counsel's assessment of each employee's "off-the-clock" work during the relevant time period. As a result, the Settlement Class Members will receive a Settlement Award based upon the alleged compensation owed and time worked for AGS during the relevant period. Settlement Award checks will be distributed to all Settlement Class Members. The cashing or depositing of a Settlement Award check sent to a given employee will operate to demonstrate that the employee agrees they are making an informed, knowledgeable, and voluntary decision to accept the terms of the Settlement and to accept the Settlement Award payment.[3]

---

[2] Complete relief renders a case moot, as recognized in *Genesis Healthcare Corp. v. Symczyk,* 133 S. Ct. 1523 (2013).

[3] Courts routinely approve this procedure of opting in and releasing FLSA claims. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *1 (M.D. Fla. Jan. 28, 2015) ("By endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation, through the date on which the Court grants preliminary approval of the settlement."); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y. Mar. 25, 2014) ("[T]he FLSA class members are defined as delivery workers employed by the defendants between April 16, 2010, and August 21, 2013, and who endorse their settlement checks or have filed a consent to join the lawsuit."); *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014) ("Defendants will not be released from the FLSA claims of FLSA collective members who do not endorse their settlement checks.").

Only those Settlement Class Members who cash or deposit their Settlement Award check will be bound by the terms of the Agreement. In contrast, the rights of those individuals who do not affirmatively choose to cash or deposit their check under the Parties' Agreement will not be impacted, and will retain all available rights. The Parties further agree that the individual Settlement Award payments to the opt-in plaintiffs and the Settlement Class Members shall constitute payment in full compromise and settlement of all Released Claims, including any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees (as defined herein) for alleged unpaid wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the FLSA and any other state or local wage-related law applicable to the work performed for AGS during the relevant time period. *Id*.

In addition to the individual Settlement Class Member payments, the Parties seek Court approval of the following payments: (1) a Service Award to Plaintiff Medrano in the amount of $2,500 (In exchange for an executed general release of any claims against AGS for the three years prior to filing the lawsuit through the date of the Court's Approval Order. Moreover, this payment is made to Plaintiff Medrano in light of his efforts resulting in a settlement on behalf of the Opt-In Plaintiffs, the valuable contributions Mr. Medrano made throughout the litigation, particularly in its initial phases, and the significant risk to his reputation and future employment. Plaintiff submits that the incentive award is reasonable.); (2) Attorneys' fees in the amount of $20,710.08, which does not exceed 40% of the Gross Settlement Amount; and (3) out-of-pocket costs incurred by Class Counsel, not to exceed $1,000.00. Finally, the Parties ask that the Court dismiss the claims in this matter, brought by Plaintiff, with prejudice, in accordance with the Parties' proposed order.

To summarize, the Parties exchanged numerous offers before arriving at the Agreement as set forth herein. Ultimately, the Parties agreed upon a total settlement of $66,000.00, broken down as follows:

| Total Award for Settlement Class Members | $ 41,790.00 |
|---|---|
| Attorney's Fees | $ 20,710.00 |
| Costs and Expenses | $1,000.00 |
| Service Fee to Plaintiff Medrano | $ 2,500.00 |

## IV.   ARGUMENT

The Parties now seek the Court's approval of their Settlement, per the terms of their Agreement, because claims under the FLSA, like those released by Plaintiff in the Agreement, may not be waived or released without U.S. Department of Labor or Court approval. *See* 29 U.S.C. 216 (c); *see also Taylor v. Progress Energy*, Inc., 415 F.3d 364, 374 (4th Cir. 2005), vacated on other grounds, 493 F. 3d 454 (4th Cir. 2007) ("Again, the Supreme court has consistently held that the rights guaranteed by the FLSA cannot be waived by private agreement between the employer and employee. Claims for FLSA violations can, of course, be settled when the settlement is supervised by the DOL or a court."). When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions. *See Lynn's Food Stores, Inc. v. United States* (*U.S. Dep't of Labor)*, 679 F.2d 1350, 1353 (11th Cir. 1982). If the settlement reflects a reasonable compromise over issues in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* As discussed herein, the Agreement represents a fair, adequate and reasonable compromise of a bona fide dispute concerning the legality of AGS's compensation practices with respect to Plaintiff and the Settlement Class Members during the relevant time period, and meets all the Court's criteria for Approval.

### a.   The Proposed Settlement is Fair, Adequate and Reasonable

In weighing a motion for approval of FLSA settlement, the court must determine whether the settlement is "fair, adequate, and reasonable." *LaFleur v. Dollar Tree Stores, Inc.,* 189 F.Supp.3d 588, 593 (E.D. Va. 2016). In doing so, the court considers six factors:

1. The extent of discovery that took place;
2. The stage of the proceedings, including the complexity, expense and likely duration of the litigation;

      3.     The absence of fraud or collusion in the settlement;
      4.     The experience of counsel who have represented the plaintiffs;
      5.     The probability of plaintiffs' success on the merits; and
      6.     The amount of the settlement in relation to the potential recovery.

*Id*. (citing *Flinn v. FMC Corp*., 528 F.2d 1169, 1173-74 (4th Cir. 1975)). The Alexandria Division of the U.S. District Court for the Eastern District of Virginia has applied these same factors when determining whether to approve a FLSA settlement agreement. *See, e.g., Houston v. URS Corp.,* 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009).

      Here, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Counsel for all Parties have considerable experience in prosecuting, defending, and settling federal and state wage-and-hour claims, and in this case were particularly well informed as to the facts and circumstances of the Lawsuit after extensive informal discovery, including production of wage and hour records. Class Counsel is fully suitable of protecting Plaintiff's rights, and the rights of the Settlement Class Members, under the statute. There is no element of fraud or collusion present. *See Houston*, 2009 WL 2474055, at *5 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel").

      The Parties have been litigating this case since January 2022. The Parties conducted informal discovery, disputed damages, and liability which informed the Parties' respective positions on all issues in this case. After the Parties reached an agreement in principle, the Parties engaged in further negotiations concerning the specific terms of the settlement and the scope of the Agreement. While the Parties may disagree as to the Plaintiff's chances of success on the merits, the Settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions and ample negotiation.

All of the alleged damages occurred during a relatively small window of time as AGS's Fort Bliss worksite has only been open and operating since March 20, 2021. There are approximately 300 current or former employees eligible for the settlement, including Named Plaintiff Medrano, and two plaintiffs who have already opted-in to the case—Jason Sommers and Mario Sanchez.

Further, it is important to note that Medrano, the Named Plaintiff, on behalf of his former coworkers, deems this settlement fair, adequate and reasonable. Medrano took an active role in this matter and stayed informed on the status of the matter. Further, the Plaintiff acknowledges that his decision to settle his lawsuit is voluntarily made of his own accord, without any pressure, coercion or undue influence by anyone.

### b.  The Proposed Settlement Resolves a Bona Fide Dispute

In addition to being fair and reasonable, to warrant Court approval, a settlement must resolve a bona fide dispute over FLSA provisions. *Houston*, 2009 WL 2474055, at *9 (citing *Lynn's Food Stores v. United States*, 679 F.2d 1350) (11th Cir. 1982). AGS seriously disputes the compensability of the time periods Plaintiff alleges constitute unpaid "off-the-clock" work.  AGS's position is that once a security guard's shift had concluded, they were no longer on duty and were not required to maintain vigilance, respond to any emergencies, or perform any duties whatsoever. AGS believes its position is supported by both the Portal-to-Portal Act which excludes certain preliminary and postliminary activities from being compensable under the FLSA, and the *de minimus* doctrine. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 36. *See also Akpeneye v. United States*, 138 Fed. Cl. 512 (2018). Additionally, AGS believes the *de minimis* doctrine bolsters its position that any time spent performing preliminary or postliminary activities, even if otherwise deemed compensable, was "insubstantial and insignificant," and thus not compensable. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, (1946) *superseded on other grounds* (articulating for the first time the *de minimus* doctrine). The Fourth Circuit has previously found periods of ten minutes or less of daily uncompensated time to be considered *de minimis* and not compensable. *See e.g., E.I. du Pont De Nemours & Co. v. Harrup,*

227 F.2d 133, 135-36 (4th Cir. 1955); *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir. 1949).

### c. The Attorneys' Fees Sought are Fair and Reasonable.

Additionally, Plaintiff contends, and Defendant does not oppose, the amount for attorneys' fees is fair and reasonable. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Class Counsel investigated the claims, analyzed pay data, managed communication with the Opt-In Plaintiffs, conducted research, and performed other work that resulted in a settlement. When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). In determining the reasonableness of the requested attorney's fee, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is exemplary. Under Plaintiff's theory of the case, Class Counsel have successfully prevailed. They acquired a class settlement that provides substantial recovery for each Settlement Class Member. Under Defendant's theory, the Settlement Class Members would be owed zero. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Settlement Class Members in this case. Thus, the work of Class Counsel provided a significant benefit to the Settlement Class Members.

## V.      CONCLUSION

The Parties believe that the terms and conditions of the Agreement are fair, reasonable, adequate, and in the best interests of all Parties. As noted above, this proposed Agreement was reached following the exchange of information and data obtained from AGS and after extensive negotiations. The Settlement provides AGS operates as a true compromise to resolve the disputed pay practices at issue. Because of the various defenses asserted by AGS and the possibility that AGS may have successfully defeated or limited all or some of Plaintiff's claims, including those claims related to compensation for "off-the-clock" work, in addition to any claim for liquidated damages, the Parties believe that the settlement represents a fair compromise of a bona fide dispute. Moreover, given the strong likelihood that absent a settlement this case would have proceeded to lengthy and drawn out litigation, a compromise of the claims prevents all Parties from incurring the additional costs and delay associated with trial and possible appeal.

WHEREFORE, the Parties hereby respectfully request that the Court: (1) approve this Settlement, including all of the terms set forth in the Agreement; (2) direct the Parties to implement the settlement process as set forth in the Agreement; and (3) dismiss Plaintiff's claims with prejudice.

Dated: October 5, 2022                                                  Respectfully submitted,

**PLAINTIFF EDWARD MEDRANO,** *et al.*
**By Counsel**

**COOK CRAIG & FRANCUZENKO, PLLC**

/s/
Alexander Francuzenko, Esq.
3050 Chain Bridge Road, Suite 200
Fairfax, Virginia  22030
Phone: (703) 865-7480
Facsimile: (703) 434-3510
alex@cookcraig.com

**DEFENDANT AKIMA GLOBAL SERVICES, LLC**
**By Counsel**

**MILES & STOCKBRIDGE P.C.**

/s/
Suzzanne Decker, Esq. (VSB #36082)
Michelle C. Johnson, Esq., *Pro Hac Vice*
100 Light Street
Baltimore, Maryland 21202
Phone: (410) 727-6464
Facsimile: (410) 385-3700
sdecker@milesstockbridge.com
mjohnson@milesstockbridge.com

*and*

**SHELLIST LAZARZ SLOBIN, LLP**

/s/
Ricardo J. Prieto, Esquire
Melinda Arbuckle, Esquire
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Phone: (713) 621-2277
Facsimile: (713) 621-0993
rprieto@eeoc.net
marbuckle@eeoc.net

*Attorneys for Plaintiff and Putative*
  *Collective Action Members*

*and*

/s/
Matthew L. Devendorf, Esq. (VSB #90670)
1751 Pinnacle Drive
Ste. 1500
Tysons Corner, VA 22102-3833
Phone: (703) 610-8645
Facsimile: (703) 610-8645
mdevendorf@milesstockbridge.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I served a copy of this document on all counsel of record via the Court's ECF system on October 5, 2022.

/s/
Suzzanne Decker, Esq.